**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JERMAINE RILEY,**

          **Petitioner,**

   **v.**

**UNITED STATES OF AMERICA,**

          **Respondent.**

**CASE NO. 2:12-CV-435
CRIM. NO. 2:07-CR-220(1)
Judge Watson
Magistrate Judge King**

**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, brings this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the *Motion to Vacate*, Doc. No. 244, Respondent's *Return of Writ*, Doc. No. 267, Petitioner's *Traverse,* Doc. No. 275, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the *Motion to Vacate* and this action be **DISMISSED**.

**Procedural History**

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> Officers of the Columbus Ohio Police Department ("COPD") arrested defendant, Jermaine Riley, after several encounters with him between October 2005 and April 2007. On October 10, 2005, the police conducted a consensual search of a friend's residence where Riley was manufacturing and distributing narcotics in exchange for supplying his friend with crack for personal use. The police recovered cocaine, cocaine base, items used to produce crack cocaine, and a loaded revolver.
>
> On March 9, 2007, COPD officers stopped a vehicle in which Riley was a passenger in the front seat. The officers first noticed the vehicle across an intersection, heading in the opposite direction. Not recognizing the vehicle or driver, the police ran the license plate number (the facts are conflicting if it was from a front

or back plate) and learned it was from out of town. They turned to follow the vehicle and saw that the rear license plate light was not working. When the police approached the stopped vehicle, the driver was very nervous. Suspicions raised, the officers called in a K–9 narcotics detection unit that they knew was nearby.

The K–9 unit arrived within 2–3 minutes, before the citation process was complete. K–9 Andor searched the outside of the vehicle while the occupants still were in it. K–9 Andor gave positive alerts indicating the presence of narcotics at the driver's door and at the front passenger's door. The police then directed the driver to step out of the car. As he did, a bag of cocaine dropped from the driver's lap onto the vehicle's front floorboard. At that time the driver was notified that he was under arrest. The police handcuffed him and patted him down uncovering a loaded 9–mm Taurus pistol tucked in the front waistband of his trousers. The driver told the police that the gun was Riley's (lab testing later confirmed that Riley's DNA was on the gun and the driver's was not). At this point, Riley was directed out of the car, handcuffed, and patted down by a second officer who found a cookie of crack in Riley's front right pants-pocket.

On April 10, 2007, the police searched Riley's mother's house based on a warrant obtained as a result of a controlled drug buy the day before. Inside the house, the police found crack cocaine, scales, paraphernalia associated with crack production and usage, the drug buy money, and two loaded AK–47 rifles placed in tactical positions within the house.

On July 12, 2008, Riley was charged in an 11–count superseding indictment for multiple drug and firearm crimes. Riley filed a motion to suppress evidence arising from the traffic stop. That motion was denied. After a five-day trial, a jury convicted Riley of conspiracy to manufacture, distribute, and possess with the intent to distribute more than 50 grams of cocaine base (crack) and of the distribution, possession, and manufacturing of crack, and the possession of firearms in furtherance of a drug-trafficking crime. The trial court sentenced Riley to serve 70 years in prison.

*United States v. Riley*, 410 Fed.Appx. 963, 2011 WL 504439, at *1 (6th Cir. February 15, 2011).

The Court of Appeals affirmed the conviction, *id.*, and Petitioner did not pursue an appeal to the United States Supreme Court.

On March 9, 2012, Petitioner filed the *Motion to Vacate*, alleging that he had been denied a fair trial because the prosecutor improperly vouched for prosecution witnesses during closing argument, corroborated witness testimony with evidence not admitted at trial, misquoted evidence, and misstated and misrepresented evidence (claims one and three); that he had been denied the effective assistance of counsel on appeal because his attorney failed to raise the claims presented in this habeas corpus petition[1] and had been denied the effective assistance of trial counsel because his attorney failed to object to prosecutorial misconduct and manifested disinterest in the case (claims two and three); and that he was convicted in violation of the Confrontation Clause on evidence constitutionally insufficient to establish the charges against him (claim four). Petitioner also alleges cumulative error (this will be addressed as claim five).

It is the position of the Respondent that Petitioner has waived his right to present these claims in federal habeas corpus review and, alternatively, that none of the claims warrants federal habeas corpus relief.

**Procedural Default**

Petitioner alleges that the prosecutor improperly vouched for the testimony of prosecution witnesses Scott Broekemeier and Michael Koogler, referred during closing argument to a videotape that had not been admitted into evidence, made improper comments during closing argument, and misquoted and misstated evidence. Petitioner also alleges that he was denied a fair trial based on cumulative error and insufficient evidence and because his rights under the Confrontation Clause were violated. All of Petitioner's claims, being readily apparent from the face of the record, should have been raised on direct appeal, but were not. Claims that were, or could have been, raised on direct appeal may not be raised in a motion to vacate, set

---

[1] Petitioner observes that, because the same attorney represented him at trial and on direct appeal, that attorney could not have raised on appeal claims regarding his own ineffectiveness at trial. *Motion to Vacate,* PageID#2328.

3

aside, or correct sentence under 28 U.S.C. § 2255. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). A motion to vacate sentence under § 2255 may not serve as a substitute or a supplementary proceeding for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). A defaulted claim cannot be raised in an action under § 2255 unless a petitioner can demonstrate "cause" for each failure to raise the claim and "actual prejudice" resulting from the error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

A claim of constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). This Court will therefore address Petitioner's claims of ineffective assistance of counsel in order to determine whether Petitioner has established cause and prejudice for his procedural defaults.

**Ineffective Assistance of Counsel as Cause for Procedural Default**

Petitioner alleges that he was denied the effective assistance of counsel because his attorney failed to object to "flagrant" instances of prosecutorial misconduct and failed to request special curative instructions, failed to object to references to a videotape that was not admitted into evidence, failed to discuss videotape evidence with Petitioner, lacked interest in the case, and continued to represent Petitioner on appeal after having representing him at trial.

Attorney H. Tim Merkle, Petitioner's trial and appellate attorney,[2] responded to Petitioner's allegations:

> From May 9, 2008 until June 28, 2009 I represented the defendant Jermaine R. Riley in the captioned matter before the United States District Court for the Southern District of Ohio. My representation of Mr. Riley included defending him in a jury trial that began on December 8, 2008 and concluded on December 15, 2008.

---

[2] Mr. Merkle filed a motion for leave to withdraw as Petitioner's counsel. *Motion to Withdraw*, Doc. No. 207. The United States Court of Appeals for the Sixth Circuit expressly extended Mr. Merkle's appointment as counsel for Petitioner on appeal. *United States of America v. Jermaine M. Riley*, Case No. 09-3705, *Ruling,* Doc. No. 4 (6th Cir. June 16, 2009).

4

Subsequently, I represented Mr. Riley before the United States Court of Appeals for the Sixth Circuit.  That representation included filing and prosecuting an unsuccessful appeal of the proceedings before the District Court.  That representation concluded on April 11, 2011 when I sent Mr. Rile a letter summarizing the matter.

Throughout the jury trial before the District Court I raised objections where in my professional judgment they were appropriate.

At all times throughout my representation of Mr. Riley I sought to fully preserve the record of all proceedings to ensure a subsequent complete judicial review of the matter.

Following the jury verdict against Mr. Riley and during the preparation for sentencing before the District Court, Mr. Riley and I discussed the prospect of having new counsel assigned to him for the prosecution of the appeal.

I believe that I raised this issue with the District Court at the sentencing hearing.  [H]owever, without reviewing a transcript of the sentencing hearing I cannot state this with absolute certainty.  Regardless, within a day following the sentencing hearing I filed a Motion to Withdraw as Counsel of Record in the District Court.  In the motion I stated that:

> The defendant believes, and the undersigned agrees, that new counsel should be appointed for the appeal.  In that way all issues including counsel's trial performance can be reviewed by the United States Court of Appeals for the Sixth Circuit.

Neither the District Court nor the Court of Appeals granted the motion, so I prepared the appeal of Mr. Riley's conviction raising assignments of error in the merit brief that I believed were legitimate bases for overturning the verdict of the jury.

Throughout the period of my representation of Mr. Riley he was held in custody.  Mr. Riley and I met numerous times to review the government's evidence and to prepare for the jury trial.  Those meetings took place at the Franklin County Corrections Center I.  I am not certain whether at that time I had portable equipment available to me to play video recordings.  Therefore, I do not recall with any degree of certainty whether I was able to show Mr. Riley the police video of Detective Weir's interview of Michael Koogler.  It is possible that Mr. Riley never saw the actual video of the interview.  However, I do recall that Mr. Riley and I reviewed the

5

>substance of the interview at length in the course of our review of the government's evidence and preparation for the jury trial.
>
>At the conclusion of the evidence, I requested the District Court to give all the jury instructions that I believed were necessary and appropriate. I also made certain that a complete record existed of the instructions given, the instructions requested and the objections made.

*Affidavit of H. Tim Merkle,* attached to *Return of Writ*, PageID #2410-12.

The right to counsel guaranteed by the Sixth Amendment is the "right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984.) To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*. at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties "inherent" in the analysis of whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland,* 466 U.S. at 687. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 692. Therefore, a petitioner must also establish prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id*. at 693. That showing requires that a petitioner demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both

prongs of the *Strickland* test in order to demonstrate the constitutional claims of ineffective assistance of counsel, should the court determine that the petitioner has failed to satisfy one prong, the court need not consider the other. *Id*. at 697.

The *Strickland* test also applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751–52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The United States Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

> A. Were the omitted issues "significant and obvious?
>
> B. Was there arguably contrary authority on the omitted issues?
>
> C. Were the omitted issues clearly stronger than those presented?
>
> D. Were the omitted issues objected to at trial?
>
> E. Were the trial court's rulings subject to deference on appeal?
>
> F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
>
> G. What was appellate counsel's level of experience and expertise?
>
> H. Did the petitioner and appellate counsel meet and go over possible issues?
>
> I. Is there evidence that counsel reviewed all the facts?
>
> J. Were the omitted issues dealt with in other assignments of error?

>K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d at 427–28. This list is not exhaustive and need not produce a certain "score." *Id*. at 428.

### 1. Claims of Prosecutorial misconduct

Petitioner first complains that his counsel failed to raise on appeal a claim of prosecutorial misconduct. However, not every instance of prosecutorial misconduct warrants reversal of a criminal conviction. "[I]t 'is not enough that the prosecutor's remarks were undesirable or even universally condemned.' The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). In making this determination, a reviewing court must determine whether the prosecutor acted improperly and, if so, whether that impropriety constitutes a denial of due process. *See Swinford v. Warden, Dayton Correctional Inst.*, No. 1:11-cv-32, 2012 WL 868979, at *6 (S.D. Ohio March 13, 2012). A criminal conviction will not be "lightly overturned on the basis of a prosecutor's comments standing alone. . . . [T]he statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11–12 (1985).

In order to determine whether a prosecutor's misconduct amounts to a due process violation, a court should consider the degree to which the misconduct misled the jury and prejudiced the accused, whether the misconduct was isolated or extensive, whether the misconduct was deliberate, whether the prosecutor manipulated or misstated the evidence, the strength of the case against the accused, whether defense counsel objected, and whether a

curative instruction was given by the trial judge.  In doing so, a reviewing court must afford wide latitude to a prosecutor's remarks during closing argument.  Inappropriate comments alone do not justify reversal where the proceedings were otherwise fair.  *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008)(citing *United States v. Young,* 470 U.S. 1, 11 (1985); *United States v. Hitow*, 889 F.2d 1573, 1579 (6th Cir.1989)).

Petitioner complains that his counsel failed to raise a claim of improper vouching by the prosecutor.  Specifically, Petitioner argues that the government improperly vouched for prosecution witness Scott Broekemeir when the prosecution made the following statements during the rebuttal portion of closing argument:

> Let's talk about Mr. Broekemeir.  What did he say and when did he say it?  That's what's important.
>
> The police came to his door, and right away he told them, yeah, there's crack in the house.  Yeah, I knew they were there.  Yeah, I knew there was a gun.  He's confessing to what happened.  He didn't say, no, you can't come in.  He didn't say get a search warrant.  He confessed right away.  He confessed to his role.  He let the cops in the house, he told the truth right away.  He was promised nothing on that date.  Not a thing.  It was [] sometime later that [I] did that.

*Trial Transcript*, *Vol. V*, Doc. No. 220, PageID# 2198.  Petitioner also complains that the prosecutor vouched for the credibility of witness Michael Koogler:

> So he's telling the truth or he's, like, Nostradamus, because he predicts the future.  All right?
>
> That's the truth.  Use your common sense in judging someone's truth.

*Id.* PageID#2204.

Prosecutors "may strike hard blows," but are "not at liberty to strike foul ones. It is as much [their] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S.

9

78, 88 (1935). A prosecutor may not express his personal opinion regarding the guilt of a criminal defendant or the credibility of a trial witness. Assurances of guilt and innocence, or "vouching" for the veracity of a witness, exceeds the prosecutor's role by inviting jurors to convict on a basis other than their neutral and independent assessment of the evidence. *United States v. Young*, 470 U.S. 1, 18-19 (1985)("[T]he prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence"); *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008) (A prosecutor should not offer his own opinion as to the credibility of a witness). Improper vouching generally involves blunt comments by the prosecution or comments implying special knowledge of facts or of the credibility and truthfulness of a witness and that witness' testimony. *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

The prosecutor's statements that Brokemeir and Koogler had told the truth were made in appropriate response to defense counsel's arguments that, in implicating Petitioner in the crimes, Broekemeir had lied in order to curry favor with police and Koogler had lied in order to serve his own interests. *See Trial Transcript*, Vol. V, PageID# 2178-79; 2183-87. Viewed in context, the prosecutor's statements did not constitute personal vouching. *See, e.g., United States v. Wells*, 623 F.3d 332, 343-44 (6th Cir. 2010)(statement that the witness told the truth to the FBI because "he's just that kind of guy" did not constitute improper vouching); *United States v. Watts,* 264 Fed.Appx. 493, unpublished, 2008 WL 449983, at *8 (6th Cir. Feb. 20, 2008)(statement that defendant was "cooperative" and "telling the truth" did not constitute improper vouching); *Verbruggen v. Wolfenbarger*, 2007 WL 4395535, at *6 (E.D. Mich. Dec. 11, 2007)(statement that witness "told the truth. . . . That's what happened". . . "was nothing more than fair commentary on the evidence when viewed in context.").

Petitioner also complains that the prosecutor improperly bolstered the testimony of Koogler and Broekemier by characterizing these witnesses as "experts" in the field of narcotics trafficking. *Petition,* PageID# 2341. Again, in using this term, the prosecutor was responding to defense counsel's argument that the testimony of these witnesses was unworthy of credit. *See Trial Transcript*, Vol. V, PageID# 2177-78; 2183-84. The prosecution responded that only people involved with the drug world have inside knowledge of that world. These statements were not improper.

Petitioner alleges that the prosecutor also engaged in misconduct during closing argument by referring to a videotape of Michael Koogler's statement to police even though that videotape was never admitted into evidence. *Motion to Vacate*, PageID #2336. Petitioner specifically refers to the following: "What did Mr. Koogler testify to? He testified that the day he was arrested, on videotape he told the police about 21st [Street]. He told the police about Bear, Big Boy, Antoine, Jermaine. He told them about crack cocaine being sold out of that house. Told them about it being manufactured in the house." *Trial Transcript*, Vol. V, PageID#762-63. Petitioner also complains that the prosecutor stated, "You heard about Mr. Koogler talking about the other individuals that he knew was conspiring with the defendant that day to the police. . . . Who did he say on the videotape?" *Id*. PageID# 2173. Petitioner contends that the prosecution, in referring to matters not admitted in evidence, improperly attempted to bolster Koogler's testimony. This Court does not agree.

Improper bolstering occurs when a prosecutor invites the jury to believe that there is other evidence, known to the prosecutor, that justifies a belief in the defendant's guilt. *Francis,* 170 F.3d at 551. Here, the prosecutor's statements referred to Koogler's testimony, elicited by defense counsel during the cross-examination of Koogler, that Koogler had reviewed his

11

recorded statements to police prior to testifying at trial. The prosecution's reference to this testimony was not improper. In any event, Petitioner cannot establish prejudice resulting from the prosecution's reference to this testimony. There is no evidence that there was any variance between Koogler's testimony and his videotaped statement. Moreover, the record reflects overwhelming evidence of Petitioner's guilt. Finally, the jury was expressly instructed that "the evidence does not include any statement of counsel made during the trial. The opening and closing arguments of counsel are designed to assist you, but they're not evidence." *Trial Transcript,* Vol. V, PageID #2211.

Petitioner also contends that the prosecutor, during the rebuttal portion of closing argument, misstated the evidence by referring to ounces instead of grams of crack cocaine and by stating that Petitioner had been cooking crack cocaine for sale. *Motion to Vacate*, PageID# 2337. The comments specifically complained of read as follows:

> Now, I submit to you this. You're going to see in your evidence that there were three larger baggies of crack cocaine found, one 24 ounce – one 24.8 ounce, one 24.6 ounce. 24, 24, and one 32 ounce baggie.
>
> What were these guys doing here? What were they doing? They were cooking crack. They're drug dealers, not users, other than Mr. Ferdinand. They're all drug dealers, too. I submit to you they were reupping. Jermaine and Antoine were cooking the crack. These guys are coming to get their baggies.

*Trial Transcript* Vol. V, PageID# 2205-2206. According to Petitioner, these statements mischaracterized the evidence because nothing in the record indicated that Petitioner and his brother and co-defendant, Antoine Riley, cooked cocaine at that location. *Motion to Vacate,* PageID#2338. Petitioner also asserts that the prosecutor's suggestion that Petitioner and his brother had a gun in the kitchen, that "Big Boy" and "Bear" assisted them in selling crack, and that Petitioner and his brother sold crack from a hotel room, all constituted improper

misstatements of the evidence. *Id*. PageID# 2338. Review of the record does not support Petitioner's assertions in this regard.

Koogler testified that he met Antoine Riley ("Monster") during the winter of 1997 when Koogler was looking for crack. *Trial Transcript,* Vol. I, PageID# 1540. Monster was selling crack from an apartment on 21st Street. *Id.* PageID# 1542. Koogler bought some crack. *Id.* PageID# 1543. Although Koogler had never "per se" seen Monster actually cook crack at that location, Koogler had seen the container in which the substance had been cooked and residue. *Id.* PageID# 1544. He had also seen baking soda and utensils which had been used to cook crack cocaine. *Id.*, PageID# 1544, 1574. On more than one occasion, Petitioner and his brother asked Koogler to sample crack at that location. *Id.*, PageID# 1574-75. Koogler drove Monster and Petitioner from time to time and was paid with crack cocaine. *Id.*, PageID# 1546. Koogler observed people at the back door of that address to purchase crack cocaine. *Id.*, PageID# 1547. He also observed a revolver and a rifle in the house. *Id.*, PageID# 1547. Koogler also bought crack cocaine from Petitioner, who was also known as "Yac" or "Maniac." Yac's brother had introduced Koogler and Petitioner. *Id.*, PageID# 1551. Koogler drove Yac around and got paid in crack. *Id.*, PageID# 1552. Yac also sold crack from the back door of the apartment on 21st Street. *Id.* These individuals also sold crack from hotel rooms and from an apartment on Drake. *Id*. "Big Boy" and "Bear" also sold crack for Yac and Monster. *Id.*, PageID# 1556-1558. Petitioner always carried a gun. *Id.*, PageID# 1563. Once, Koogler picked up Petitioner from a hotel room with "a mess" of cocaine. *Id.*, PageID#1562. Koogler was giving Petitioner a ride from the hotel to Petitioner's mother's house when police pulled them over for a traffic violation. *Id.*, PageID# 1550, 1563, 1566. Petitioner placed his firearm in Koogler's waist band. *Id.*, PageID# 1566. Koogler was indicted and entered into a plea bargain with the government. *Id.*,

PageID# 1572-73. Pursuant to the terms of that agreement, Koogler testified against Petitioner at trial. *Id.*, PageID# 1573. Koogler had not been sentenced at the time of Petitioner's trial and he hoped for a sentence reduction based on his testimony against Petitioner. PageID# 1574.

Thus, and in light of Koogler's actual testimony at trial, the prosecutor's statements were not improper.

Petitioner also complains that the prosecutor improperly referred to ounces of crack cocaine, rather than to grams, during this portion of closing argument. *See Trial Transcript*, Vol. V, PageID#2205. Respondent acknowledges these references, but points out that the record otherwise consistently reflects that the case involved grams of crack cocaine, and not ounces. *Return of Writ*, PageID# 2395. Petitioner does not refer to, and this Court is unable to locate, any other point in the trial during which the government misstated the amount of crack cocaine at issue in the case. In fact, the prosecutor later referred to grams of crack. *Trial Transcript*, Vol. V, PageID# 2206; 2232-33. Under the circumstances, the reference to ounces – which was isolated and not flagrant – appears to have been an unintentional misstatement or a typographical error. The jury instructions accurately used the proper term, *see Trial Transcript*, Vol. V, PageID# 2218-21, and the verdict forms required specification of the quantity of drugs. *See Jury Verdict,* Doc. No. 185, PageID# 1102, 1106, 1111, 1114.

In *United States v. Henry*, 545 F.3d at 378, the United States Court of Appeals for the Sixth Circuit addressed facts similar to those at issue here and rejected the argument that an isolated misstatement of the quantity of cocaine warranted relief. This Court reaches the same conclusion here.

Because this Court finds none of the prosecutor's comments complained of by Petitioner to be erroneous, Petitioner cannot establish prejudice resulting from his counsel's failure to object to

those comments or from his counsel's failure to request a special jury instruction in connection with those comments. As noted *supra*, the District Court instructed the jury that the comments of counsel do not constitute evidence. Petitioner does not refer to, and this Court is not able to locate any evidence that Petitioner's counsel "lacked interest" in the case. Although defense counsel cannot recall if Petitioner reviewed a videotape prior to trial, the evidence did not include the contents of the videotape; it is therefore not apparent that Petitioner was prejudiced by any failure to review that videotape. As to his counsel's representation of Petitioner on direct appeal at the express direction of the Court of Appeals, Petitioner has failed to establish that any claim not raised on appeal was potentially meritorious or that Petitioner was prejudiced by his counsel's failure to assert any additional claims.

In short, Petitioner cannot establish that his attorney was constitutionally ineffective in failing to object to the statements and comments of the prosecutor or in failing to assert on appeal claims based on those statements and comments.

**2. Claim Based on Confrontation Clause**

Petitioner alleges that he was convicted in violation of the Confrontation Clause because he was not permitted to cross-examine the government's confidential informant. Detective Steven Patron testified that he used a paid confidential informant to purchase crack cocaine from 1210 East 21st Avenue. Detective Patron testified that he observed the purchase of cocaine by the confidential informant, that the purchased drugs were tested upon the confidential informant's return to the police, and that the incident was referred to in an application for a warrant to search the residence. *Trial Transcript*, Vol. III, PageID# 1816-17.

The Sixth Amendment to the United States Constitution guarantees to criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial.

*Illinois v. Allen,* 397 U.S. 337, 388. In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that the testimonial statements of a witness who does not appear at trial are inadmissible unless the witness is unavailable to testify and the defense has been afforded the opportunity to cross examine the witness. "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Id.* at 1366. Here, however, the government introduced no hearsay statement by the confidential information. It was Detective Patron's testimony that was used against Petitioner, and Petitioner was free to cross examine Detective Patron on that testimony. There was no violation of Petitioner's right to confront the witnesses against him in this regard, and Petitioner's counsel was not ineffective for failing to raise this claim at trial or on appeal.

   3.  **Claim Based on Cumulative Error**

Petitioner also alleges that he is entitled to habeas corpus relief based upon cumulative error. The United States Court of Appeals for the Sixth Circuit has held that a court may consider whether the cumulative effect of trial errors was such that a petitioner was denied fundamental fairness. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988); *Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983)). However, as discussed *supra*, Petitioner has not identified any prejudicial error in the record. Under these circumstances, Petitioner's cumulative error claim would have failed even if such a claim had been raised on direct appeal "because there are simply no errors to cumulate." *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007).

In short, the Court concludes that Petitioner has not established cause for the procedural default of his claims. Alternatively, the Court concludes that Petitioner's claims are without merit.

It is therefore **RECOMMENDED** that Petitioner's *Motion to Vacate*, Doc. No. 244, be **DENIED** and that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                 *s/ Norah McCann King*
                                                 Norah McCann King
                                                 United States Magistrate Judge

April 14, 2014

Case: 2:07-cr-00220-MHW-NMK Doc #: 278 Filed: 04/14/14 Page: 18 of 18  PAGEID #: 2460

18